## J. I. CASE CO. *v.* NATIONAL LABOR RELATIONS BOARD.

No. 67.   Argued January 3, 1944.—Decided February 28, 1944.

*Mr. Clark M. Robertson,* with whom *Messrs. John C. Gall, Ben T. Reidy,* and *Howard R. Johnson* were on the brief, for petitioner.

*Mr. Alvin J. Rockwell,* with whom *Solicitor General Fahy, Messrs. Valentine Brookes, Robert B. Watts,* and *Jacob I. Karro,* and *Miss Ruth Weyand* were on the brief, for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This cause was heard by the National Labor Relations Board on stipulated facts which so far as concern present issues are as follows:

The petitioner, J. I. Case Company, at its Rock Island, Illinois, plant, from 1937 offered each employee an individual contract of employment. The contracts were uniform and for a term of one year. The Company agreed to furnish employment as steadily as conditions permitted, to pay a specified rate, which the Company might redetermine if the job changed, and to maintain certain hospital facilities. The employee agreed to accept the provisions, to serve faithfully and honestly for the term, to comply with factory rules, and that defective work should not be paid for. About 75% of the employees accepted and worked under these agreements.

According to the Board's stipulation and finding, the execution of the contracts was not a condition of employment, nor was the status of individual employees affected by reason of signing or failing to sign the contracts. It is not found or contended that the agreements were coerced, obtained by any unfair labor practice, or that they were not valid under the circumstances in which they were made.

While the individual contracts executed August 1, 1941 were in effect, a C. I. O. union petitioned the Board for certification as the exclusive bargaining representative of the production and maintenance employees. On December 17, 1941 a hearing was held, at which the Company urged the individual contracts as a bar to representation proceedings. The Board, however, directed an election, which was won by the union. The union was thereupon certified as the exclusive bargaining representative of the employees in question in respect to wages, hours, and other conditions of employment.

The union then asked the Company to bargain. It refused, declaring that it could not deal with the union in any manner affecting rights and obligations under the individual contracts while they remained in effect. It offered to negotiate on matters which did not affect rights under the individual contracts, and said that upon the expiration of the contracts it would bargain as to all matters. Twice the Company sent circulars to its employees asserting the validity of the individual contracts and stating the position that it took before the Board in reference to them.

The Board held that the Company had refused to bargain collectively, in violation of § 8 (5) of the National Labor Relations Act; and that the contracts had been utilized, by means of the circulars, to impede employees in the exercise of rights guaranteed by § 7 of the Act, with the result that the Company had engaged in unfair labor practices within the meaning of § 8 (1) of the Act. It ordered the Company to cease and desist from giving effect to the contracts, from extending them or entering into new ones, from refusing to bargain and from interfering with the employees; and it required the Company to give notice accordingly and to bargain upon request.

The Circuit Court of Appeals, with modification not in issue here, granted an order of enforcement. The issues are unsettled ones important in the administration of the Act, and we granted certiorari. In doing so we asked counsel, in view of the expiration of the individual contracts and the negotiation of a collective contract, to discuss whether the case was moot. In view of the continuing character of the obligation imposed by the order we think it is not, and will examine the merits.

Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an

accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. Without pushing the analogy too far, the agreement may be likened to the tariffs established by a carrier, to standard provisions prescribed by supervising authorities for insurance policies, or to utility schedules of rates and rules for service, which do not of themselves establish any relationships but which do govern the terms of the shipper or insurer or customer relationship whenever and with whomever it may be established. Indeed, in some European countries, contrary to American practice, the terms of a collectively negotiated trade agreement are submitted to a government department and if approved become a governmental regulation ruling employment in the unit.[1]

After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring. This hiring may be by writing or by word of mouth or may be implied from conduct. In the sense of contracts of hiring, individual contracts between the employer and employee

---

[1] See Hamburger, The Extension of Collective Agreements to Cover Entire Trade and Industries (1939) 40 International Labor Review 153; Methods of Collaboration between Public Authorities, Workers' Organizations, and Employers' Organizations (International Labour Conference, 1940) p. 112.

are not forbidden, but indeed are necessitated by the collective bargaining procedure.

But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, even if on his own he would yield to less favorable terms. The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits, any more than a shipper can contract away the benefit of filed tariffs, the insurer the benefit of standard provisions, or the utility customer the benefit of legally established rates.

Concurrent existence of these two types of agreement raises problems as to which the National Labor Relations Act makes no express provision. We have, however, held that individual contracts obtained as the result of an unfair labor practice may not be the basis of advantage to the violator of the Act nor of disadvantage to employees. *National Licorice Co.* v. *Labor Board*, 309 U. S. 350. But it is urged that where, as here, the contracts were not unfairly or unlawfully obtained, the court indicated a contrary rule in *Labor Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 44–45, and *Virginian Ry. Co.* v. *System Federation*, 300 U. S. 515. Without reviewing those cases in detail, it may be said that their decision called for nothing and their opinions contain nothing which may be properly read to rule the case before us. The court in those cases recognized the existence of some scope for individual contracts, but it did not undertake to define it or to consider the relations between lawful individual and collective agreements, which is the problem now before us.

Care has been taken in the opinions of the Court to reserve a field for the individual contract, even in industries covered by the National Labor Relations Act, not merely as an act or evidence of hiring, but also in the sense of a completely individually bargained contract setting out

terms of employment, because there are circumstances in which it may legally be used, in fact, in which there is no alternative. Without limiting the possibilities, instances such as the following will occur: Men may continue work after a collective agreement expires and, despite negotiation in good faith, the negotiation may be deadlocked or delayed; in the interim express or implied individual agreements may be held to govern. The conditions for collective bargaining may not exist; thus a majority of the employees may refuse to join a union or to agree upon or designate bargaining representatives, or the majority may not be demonstrable by the means prescribed by the statute, or a previously existent majority may have been lost without unlawful interference by the employer and no new majority have been formed. As the employer in these circumstances may be under no legal obligation to bargain collectively, he may be free to enter into individual contracts.[2]

Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor to exclude the contracting employee from a duly ascertained bargaining unit; nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement. "The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices." *National Licorice Co.* v. *Labor Board,* 309 U. S. 350, 364. Wherever private contracts conflict with its functions, they obviously must yield or the Act would be reduced to a futility.

---

[2] Cf. *Labor Board* v. *Sands Mfg. Co.,* 306 U. S. 332; *Labor Board* v. *Columbian Enameling & Stamping Co.,* 306 U. S. 292, 297–98; *Labor Board* v. *Brashear Freight Lines,* 119 F. 2d 379; Hoeniger, The Individual Employment Contract and Individual Bargain, 10 Fordham L. Rev. 14, 22–25.

It is equally clear since the collective trade agreement is to serve the purpose contemplated by the Act, the individual contract cannot be effective as a waiver of any benefit to which the employee otherwise would be entitled under the trade agreement. The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group. Its benefits and advantages are open to every employee of the represented unit, whatever the type or terms of his pre-existing contract of employment.

But it is urged that some employees may lose by the collective agreement, that an individual workman may sometimes have, or be capable of getting, better terms than those obtainable by the group and that his freedom of contract must be respected on that account. We are not called upon to say that under no circumstances can an individual enforce an agreement more advantageous than a collective agreement, but we find the mere possibility that such agreements might be made no ground for holding generally that individual contracts may survive or surmount collective ones. The practice and philosophy of collective bargaining looks with suspicion on such individual advantages. Of course, where there is great variation in circumstances of employment or capacity of employees, it is possible for the collective bargain to prescribe only minimum rates or maximum hours or expressly to leave certain areas open to individual bargaining. But except as so provided, advantages to individuals may prove as disruptive of industrial peace as disadvantages. They are a fruitful way of interfering with organization and choice of representatives; increased compensation, if individually deserved, is often earned at the cost of breaking down some other standard thought to be for the welfare of the group, and always creates the suspicion of being

paid at the long-range expense of the group as a whole. Such discriminations not infrequently amount to unfair labor practices. The workman is free, if he values his own bargaining position more than that of the group, to vote against representation; but the majority rules, and if it collectivizes the employment bargain, individual advantages or favors will generally in practice go in as a contribution to the collective result. We cannot except individual contracts generally from the operation of collective ones because some may be more individually advantageous. Individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the laws of contracts applicable, and to the Labor Board if they constitute unfair labor practices.

It also is urged that such individual contracts may embody matters that are not necessarily included within the statutory scope of collective bargaining, such as stock purchase, group insurance, hospitalization, or medical attention. We know of nothing to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice. But in so doing the employer may not incidentally exact or obtain any diminution of his own obligation or any increase of those of employees in the matters covered by collective agreement.

Hence we find that the contentions of the Company that the individual contracts precluded a choice of representatives and warranted refusal to bargain during their duration were properly overruled. It follows that representation to the employees by circular letter that they had such legal effect was improper and could properly be prohibited by the Board.

One minor matter remains for consideration. The literal terms of the Board's order require the Company to "cease and desist from (a) giving effect to the individual contracts of employment or any modification, continuation, extension, or renewal thereof, or entering into any similar form of contract with its employees for any period subsequent to the date of this decision," and to give written notice to each to that effect and that "such contract will not in any manner be enforced or attempted to be enforced" and that "such discontinuance of the contract is without prejudice to the assertion of any legal rights the employee may have acquired under such contract."

These provisions, it has been argued, go beyond the Board's power, leave employees free to bring but the Company powerless to defend actions on the contract, and prohibit making future contracts even when not obnoxious to the law or to any collective agreement.

The Board, of course, has no power to adjudicate the validity or effect of such contracts except as to their effect on matters within its jurisdiction. *National Licorice Co.* v. *Labor Board, supra.* The Board, however, would construe the order more narrowly than its terms suggest. It says, "The provision in question, as we have seen, is based upon the finding that the contracts were utilized as a means of interfering with rights guaranteed by the Act and constituted an obstacle to collective bargaining. Read in the context of this finding, the requirement of the cease and desist provisions enjoins petitioner only from continuing to derive benefits from the contracts heretofore utilized to forestall collective bargaining and deter self-organization, and from entering into new contracts either for the purpose of again thus utilizing them or under circumstances in which similar infringement of the collective bargaining process would be a probable consequence. The paragraph does not prevent petitioner from contracting with individual employees under circumstances which negative any

intent to interfere with the employees' rights under the Act. . . . Thus construed, the challenged requirement is but a reasonable safeguard . . ."

We agree, but the literal language of the order may well be read in quite different meaning, especially when separated from findings and standing alone in the Court's enforcement order. It then becomes the language of the Court, and the Court would not be bound to look upon the Board's construction as its own. Questions of construction had better be ironed out before enforcement orders issue than upon contempt proceedings. A party is entitled to a definition as exact as the circumstances permit of the acts which he can perform only on pain of contempt of court. Nor should he be ordered to desist from more on the theory that he may violate the literal language and then defend by resort to the Board's construction of it. Courts' orders are not to be trifled with, nor should they invite litigation as to their meaning. It will occur often enough when every reasonable effort is made to avoid it. Where, as here, the literal language of the order goes beyond what the Board admits was intended, correction should be made. Paragraphs 1 (a) and 2 (a) of the decree of the court below are hereby modified, by adding the words in italics, to read as follows:

"1. Cease and desist from:

"(a) Giving effect to the individual contracts of employment or any modification, continuation, extension, or renewal thereof *to forestall collective bargaining or deter self-organization,* or entering into any similar form of contract with its employees for any period subsequent to the date of this Decree *for such purpose or with such effect.*

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Give separate written notice to each of its employees who signed an individual contract of employment or any modification, continuation, extension, or renewal

thereof, or any similar form of contract for any period subsequent to the date of this Decree, that such contract will not in any manner be enforced or attempted to be enforced *to forestall collective bargaining or deter self-organization,* that the employee is not required or expected by virtue of such contract to deal with respondent individually *in respect to rates of pay, wages, hours of employment, or other conditions of employment,* and that such discontinuance of the contract is without prejudice to the assertion of any legal rights the employee may have acquired under such contract *or to any defenses thereto by the employer."*

As so modified the decree is

*Affirmed.*

MR. JUSTICE ROBERTS is of opinion that the judgment should be reversed.