HUDSON COUNTY NEWSPAPER GUILD, LOCAL 42 OF THE AMERICAN NEWSPAPER GUILD, C. I. O. ET ALS., PLAINTIFFS, v. JERSEY PUBLISHING COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Argued April 24, 1952—Decided May 7, 1952.

*Mr. Raymond Chasan,* attorney of plaintiffs.

*Messrs Lichtenstein & Engel,* attorneys for defendant *(Mr. Howard Engel,* appearing).

JOSEPH L. SMITH, J. S. C. Under the rules, this case is submitted to the court without a jury on an agreed stipulation of facts which are made a part thereof as though fully set forth herein.

This is an action wherein plaintiffs seek to recover two weeks' salary by virtue of a clause in a collective bargaining agreement entered into between plaintiffs and defendant. Plaintiffs allege that by virtue of section XII two weeks' notice was required, and that since said notice was not given a corresponding amount equal to each individual's two weeks' salary is due and owing.

Defendant maintains that having fulfilled the requirements of article VIII and IX by payment of a severance pay and

all accumulated vacation credits, it has fulfilled its obligation and that said article XII is not applicable under the instant facts.

The pertinent articles are as follows:

"Article VIII Severance Pay:
1. Upon dismissal, an employee upon request shall receive a written notice from the Publisher or his agents stating the cause for his dismissal * * *."
"Article XII Security.
1. There shall be no discharges except for just and sufficient cause. Except in the case of proven dishonesty, or self provoked discharge for the purpose of collecting severance pay, the Guild shall be notified in writing at least two weeks in advance of any discharge, with the reason for the dismissal stated in such notice * * *."

The facts in this case are simple. Defendant, after publishing a daily paper for over 59 years, because of economic difficulties suspended publication and went out of business. At the time of this suspension of publication there was in existence a collective bargaining agreement between the plaintiff Guild and the defendant; the pertinent articles are aforementioned.

Pursuant to paragraph 2 of article VIII of this said collective bargaining agreement, defendant paid severance pay to all employees of its editorial department, including the individual plaintiffs herein. The defendant also paid, under article IX of said collective bargaining agreement, accumulated vacation credits payable upon "termination of employment," to the individual plaintiffs herein.

Plaintiffs allege that in addition to the severance pay clause, article XII is also applicable, and that under the circumstances an additional two weeks' pay is due since "The Guild shall be notified in writing at least two weeks in advance of any discharge."

. The question submitted to this court is one of apparent simple contract interpretation, i. e., the issue is whether or not the individual plaintiffs are entitled, by virtue of the provision of article XII of said collective bargaining agreement, to recover of the defendant the amounts specified as

the equivalent of two weeks' pay in paragraph 6 of the complaint in this action, without interest or costs, and subject to lawful deductions for social security taxes, unemployment compensation taxes, and income tax withholding, or whether the defendant, by making the payment under article VIII and IX, discharged its full obligation to said plaintiffs.

It has been held that under the collective bargaining agreement entered into between the plaintiff Guild and the defendant, said agreement was not an employment agreement but rather was an agreement setting out working conditions.

In *J. I. Case Company v. N. L. R. B.*, 321 *U. S.* 332, 64 *S. Ct.* 576, 88 *L. Ed.* 762 (1944) Mr. Justice Jackson says:

"Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment."

The primary question evolves about the use of the terms "dismissed" and "discharge" as used in the articles dealing with severance pay and security. This problem is rather novel to the courts of this State; therefore reference will be made to the *Labor Arbitration Reports* wherein persons skilled in the interpretation of such agreements act as the arbitrators.

*Hudson Mohair Co. v. United Textile Workers of America A. F. of L.*, 11 *Labor Arbitration Reports* 42 (*March 22, 1948*):

"There is nothing conclusive to be drawn from the fact that an action taken on July 31st, 1947 (when a plant was shut down and employees discharged) was called a 'discharge.' A mere label has no meaning unless that to which it is applied is generally recognized by the label. The field of industrial relations may be plagued by problems of semantics, but surely the designation of 'discharge' is not one of them. There are three recognized components of employment separation: (1) a quit—indicating voluntary separation from a job

·by employee decision; (2) a layoff, which may be temporary or permanent, and is prompted by a production drop, technological change, or abolition of a job; and (3) a discharge, involving a dismissal from employment for the reason of unsatisfactory performance or behavior as an employee. The foregoing 'labels' have widespread acceptance and usage by persons in the industrial relations field, and, more important, by workers in American industry."

It is apparent from the foregoing case that the arbitrators concluded that the action taken by the employer constituted a layoff rather than a discharge, and that therefore the "discharged" men were entitled to rights as "laid off" employees.

■ It is elemental that a contract must be considered as a whole, and the intent of the parties gathered from all its parts. *Stevens v. Coirin,* 93 *N. J. L.* 502 (*E. & A.* 1919). Also that in the interpretation of contracts, the language employed must be given its ordinary meaning. *Mellon v. Mississippi Wire Glass Co.,* 77 *N. J. Eq.* 498 (*Ch.* 1910). "In construing a written contract the words employed will be given their ordinary and popularly accepted meaning, in the absence of anything to show that they were used in a different sense." *Proprietors Realty Co. v. Wohltmann,* 95 *N. J. L.* 303 (*Sup. Ct.* 1920).

■ From a consideration of the two articles in question, severance pay and security, this court can reach but one conclusion, and that is that severance pay was intended to cover such a circumstance as arose under the shut down of the defendant Jersey Publishing Company, and that the rights which arose under article XII, Security, would be applicable only if an employee had been discharged for reasons arising out of his own conduct or misconduct. Article XII, Security, was a protective measure to insure that the employee was not persecuted or discharged without reason.

■■ However, should this court be doubtful as to the interpretation to be given these two articles, and the intention of the respective parties, the following rules would be applicable:

In case of doubt as to the meaning of a written contract, the language is to be taken most strongly against the person using it. *Fletcher v. Interstate Chemical Company,* 94 *N. J. L.* 332 (*Sup. Ct.* 1920) affirmed 95 *N. J. L.* 543 (*E. & A.* 1920). This court is of the opinion the chief benefits under such an agreement go to the Guild and its respective members, therefore the rule as laid down in *Anfield v. Love,* 5 *N. J. Super.* 347 (*App. Div.* 1949) is applicable:

"The language to be construed was the language of the defendant, and under well settled rules, when words of intention bear more than one reasonable meaning, an interpretation is preferred which operates more strongly against the party from whom they proceed, unless the use by him is prescribed by law."

The rule as originally laid down in *Bowen v. Vickers,* 2 *N. J. Eq.* 520 (*Ch.* 1839) still controls:

"Even if the construction of the agreement was doubtful, that doubt should be resolved in favor of the defendant."

Judgment will be entered for the defendant.