John D. MARSHALL, D. Gothie, B. C. Cartledge, E. V. Allen, James Sparks, Leroy Campbell, J. Lyons and Southern Association of Colored Railroad Trainmen, Incorporated

v.

CENTRAL OF GEORGIA RAILWAY COMPANY, the Brotherhood of Railroad Trainmen, Local Lodge No. 721, Brotherhood of Railroad Trainmen, E. G. Byington, Z. P. Logan, and W. A. Nealy.

Civ. A. No. 834.

United States District Court
S. D. Georgia, Savannah Division.
Oct. 24, 1956.

Kirk McAlpin (of Bouhan, Lawrence, Williams & Levy), Savannah, Ga., for Brotherhood of Railway Trainmen.

Ralph L. Crawford, Savannah, Ga., for John D. Marshall.

Julian Sipple (of Lawton & Cunningham), Savannah, Ga., for Central of Georgia R. Co.

SCARLETT, District Judge.

The plaintiffs as Negro trainmen employed in the Savannah Division of the Central of Georgia Railway Company and the Southern Association of Colored Railroad Trainmen bring an action on

behalf of such Negro trainmen and others similarly situated against the defendants to prevent their putting into effect the five day work week under a collective bargaining agreement entered into between railroads represented by the Eastern and Western and Southeastern Carriers Conference Committees and the trainmen represented by the Brotherhood of Railroad Trainmen, which included the defendant Central of Georgia Railway Company and the Brotherhood of Railroad Trainmen, which Agreement was to become effective December 1, 1955.

Plaintiffs further prayed for a declaratory judgment to declare that the Brotherhood of Railroad Trainmen, before entering into any collective agreement, must notify them and give them an opportunity to be heard; to declare the Agreement of October 4, 1955 null and void for failure to give notice and hold an election regarding the Agreement of October 4, 1955; to declare that no person may be compelled to accept the services of the Brotherhood of Railroad Trainmen so long as that organization refuses membership to persons on account of race, color or creed. The contested Agreement of October 4, 1955 provided for a five day work week, effective December 1, 1955, at an increased rate of pay. Plaintiffs, although admitting that the Brotherhood of Railroad Trainmen was the duly designated and authorized sole collective bargaining agent for their entire craft, at the time of the execution of said agreement, urged that the contract was invalid because: (1) The agreement was made without the giving of notice to the plaintiffs; (2) That a settlement agreement had previously been made and a vote taken in May, 1953, in which the employees indicated that they wished to retain the six day work week, which had since that time remained in effect, and, therefore, the said Agreement of October 4, 1955 was illegal and void for that reason; and (3) That the Agreement of October 4, 1955 sought to discriminate against Negro trainmen to reduce the scale of pay and

rank of the Negro yardmen, and was discriminatory, oppressive and in violation of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. and denied them an opportunity to be heard or to vote on matters affecting their earnings, seniority and working conditions, and if put into effect, would provide additional pay for white employees and additional jobs for white employees, because of the present system of employing only white persons, no Negroes allegedly having been employed as switchmen since 1944.

The petition was filed on November 28, 1955, and the Court issued a rule nisi, requiring the defendants to show cause within three (3) days, i. e., on December 1, 1955 why a temporary restraining order and injunction should not issue. After the hearing on that date, both of the defendants moved for a dismissal of the complaint for failure to state a claim upon which relief could be granted.

The Court having considered all the evidence introduced, the arguments of counsel and the Law applicable thereto, at the conclusion of the hearing on December 1, 1955, dismissed the plaintiffs' complaint, being of the opinion that the Agreement of October 4, 1955 was valid, and that the plaintiffs were not entitled to an injunction or the relief prayed.

The Court makes the following findings of fact and conclusions of Law:

### Findings of Fact

1. That the Agreement of October 4, 1955 is a mediation Agreement in settlement of differences entered into between the Brotherhood of Railroad Trainmen and the Eastern Carriers' Conference Committee, the Western Carriers' Conference Committee and the Southeastern Carriers' Conference Committee (which includes the Central of Georgia Railway Company,) under the provisions of the Railway Labor Act, as amended.

2. That on March 15, 1949, proposals were exchanged between said Carriers and the Brotherhood of Railroad Trainmen concerning pay and working conditions, etc., of trainmen and other employees; that a Presidential Emergency

Board was appointed and conducted a hearing concerning the differences between the parties and filed its report, together with its findings and recommendations, with the President of the United States, resulting in the aforesaid Carriers' Conference Committees (which included the Central of Georgia Railway Company) and the collective bargaining agent, Brotherhood of Railroad Trainmen, entering into an Agreement of May 25, 1951; that the instant Agreement of October 4, 1955 is an amendment to the aforesaid Agreement of May 25, 1951. Neither the Agreement of May 25, 1951, nor the amendment, the Agreement of October 4, 1955, nor the Railway Labor Act as amended requires that the individual members of the craft, such as the plaintiffs, be given notice as a condition precedent to the collective bargaining agent for the craft entering into such agreements, as claimed by petitioners.

3. That the contract of October 4, 1955, though providing for a five day work week, also provides other tangible benefits to the employees, including among other things increases in the rates of pay.

4. That the contract of October 4, 1955 is the result of continuous and extended negotiations between defendants, dating back as far as 1949.

5. That the Brotherhood of Railroad Trainmen is the duly authorized collective bargaining agent for all employees of the craft, including the plaintiffs, and has fairly and impartially represented the interests of the entire craft in negotiating with the railroad since 1949, which fact is evidenced by increases in pay for switchmen from $11.46 per day in 1949 to $18.15 per day, which latter rate became effective December 1, 1955, under the contract of October 4, 1955, thus giving these employees since that time a total overall increase of $6.69 per day, while still providing additional benefits to the employee, including a shorter work week.

6. That Negro switchmen have been employed by defendant railroad in the Savannah yard and in other divisions of said Railroad since 1944, and there has been no policy of hiring only white switchmen and not Negroes, as alleged by the petitioners.

7. That under the contract of October 4, 1955, switchmen or yardmen on the Extra Board are first called and the Extra Board exhausted for extra duty before senior switchmen and yardmen are given any priority for overtime work or for additional work to be done on Sundays or holidays, which provides for more even distribution and spreading of the work among all switchmen and yardmen, both young and old, the white senior switchmen being affected equally with colored senior switchmen.

8. The contract of October 4, 1955 is valid and does not discriminate against any special class or group, on account of race, color or creed, including the plaintiffs, but equally affects all persons covered by the Agreement.

9. The collective bargaining agent had authority to represent all members of the craft, including the plaintiffs, and did so fairly and with impartial consideration of the interests of all employees concerned.

10. The vote and purported settlement agreement of May, 1953 does not preclude the bargaining agent from entering into said Agreement, nor require it to hold an election and submit it to the craft for its approval prior to executing same.

### Conclusions of Law

1. There being no racial discrimination shown, the plaintiffs were not entitled to notice prior to the execution of the Agreement in question, inasmuch as the Brotherhood of Railroad Trainmen was the duly authorized bargaining agent and representative for the plaintiffs at the time of the making of the agreement, and as such, had authority under the Railway Labor Act to negotiate and enter into such contract in behalf of the craft. The Supreme Court in Steele v. Louisville and Nashville Railroad Company, 323 U.S. 192, at page 202,

65 S.Ct. 226, at page 232, 89 L.Ed. 173, said:

"Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents, cf. J. I. Case Co. v. National Labor Relations Bd., supra, 321 U.S. [332] 335, 64 S.Ct. [576] 579 [88 L.Ed. 762, 766], but it has also imposed on the representative a corresponding duty. We hold that the language of the Act to which we have referred, read in the light of the purposes of the Act, expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them.

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit * * *."

■ 2. The bargaining agent having authority under the law to contract for changes in wages, hours and working conditions, and there being no discrimination as claimed, the Court will not inquire into the motives prompting such changes. In Pellicer v. Brotherhood of Railway and Steamship Clerks, 5 Cir., 217 F.2d 205, at page 206, certiorari denied 349 U.S. 912, 75 S.Ct. 601,

99 L.Ed. 1246, the Fifth Circuit Court of Appeals held, to wit:

"* * * The substance of plaintiff's claim is that any amendment or modification in the provisions of a collective bargaining agreement must operate equally as to all members of the craft without discrimination, and that all must be treated in an identical manner. There is no charge of fraud or bad faith. The law is that changes effectuating differentiations or unequal treatment among employees are not invalid unless some clearly expressed public policy is contravened; and that in the absence of fraud or bad faith the courts will not inquire into the motives which prompt such changes, nor will they substitute their judgment for that of the bargaining agency on the reasonableness of the modifications."

Also in Ford Motor Company v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 686, 97 L.Ed. 1048, it was held:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

■ 3. The Agreement does not conflict with the express provisions of the Railway Labor Act, nor is it in violation of any constitutional rights of the plaintiffs.

■ 4. The collective bargaining agent representing all of the craft, whether union or nonunion, and the qualifications for membership in the union being a matter relating to the internal

affairs of the union, with which Congress has not seen fit to deal, there is no basis for plaintiffs' claim that the contract is not enforceable as a result of their being ineligible for membership in the union.

Whereupon, It Is Considered, Ordered and Decreed that petitioners' prayers for interlocutory injunction and relief are denied and the complaint dismissed.