## GRANITE-GROVES v. FRANCIS E. EDELEN

[No. 62, September Term, 1980.]

*Decided October 15, 1980.*

---

680

The cause was argued before MOORE, LOWE and WILNER, JJ.

*Geoffrey T. Keating* for appellant.

*George E. Meng* for appellee.

MOORE, J., delivered the opinion of the Court.

We here consider the validity of an oral agreement entered into between the appellant-employer, Granite-Groves, a joint venture contractor on a segment of the Metro construction project, and the appellee-employee, Francis E. Edelen, in light of the provisions of a collective bargaining agreement with the Union of which appellee was a member, appellant being a party to that agreement.

## I

By virtue of its status as a construction contractor in the Washington, D. C. Metropolitan Area, appellant was a party to a collective bargaining "Working Agreement" of the Laborers' District Council of Washington, D. C. and Vicinity effective May 1975 through April 1978. During the period relevant to this case, the agreement was in effect. It provided, *inter alia,* that the employer "recognizes and acknowledges that the Union is the exclusive representative of employees in the classification of work covered by this agreement for the purpose of collective bargaining. . . ." Its myriad provisions included those governing hiring procedures, work assignments and disputes, wage rates, on-the-job injuries, and many others.

The appellee was a laborer and a member of Laborers' Local 456 of the Laborers' District Council, subject to the provisions of the working agreement. He was also appointed shop steward by the union pursuant to the agreement and was a shop steward at the time the present controversy arose. On June 18, 1977, Edelen broke his leg in an off-the-job accident and was unable to work.

The testimony accepted by the lower court reveals that an informal meeting was held on June 22, 1977 at which Edelen, two union representatives, the employer's assistant project manager, the midnight shift shop steward, and Howard Wills, a laborer, were in attendance. It was orally agreed that Wills would temporarily replace Edelen as shop steward until Edelen returned to work. Upon Edelen's return on August 31, 1977, he was informed by the project manager that there was no work available for him.[1] As a result, the union requested arbitration pursuant to the working agreement. The arbitrator, by a written decision dated December 29, 1977, denied Edelen's grievance, ruling that there was no remedy under the working agreement. The decision stated, in pertinent part:

> "[W]hen Edelen became incapacitated in June because of an off-the-job injury, and was promptly replaced, his status as an employee under the Agreement terminated. So far as the Agreement is concerned, the Company was under no obligation to put him on leave or to continue his status in any way. Apparently Izac [Granite-Groves' assistant project manager], on behalf of the Company, did accede to a Union-request that Edelen's replacement as shop steward would be 'temporary' until Edelen returned. It may well be that this constituted an agreement that Edelen could return to work. This separate agreement, however, was not part of the main Agreement, which the Arbitrator is empowered to construe and apply. *Whether that separate understanding is a valid, binding agreement, as the Union urges, or whether it falls for want of consideration as the Company urges, it clearly is not an agreement enforceable at arbitration under the main Agreement."* (Emphasis added.)

---

1. The unavailability of work is not in dispute. Appellee offered no evidence to the contrary.

Edelen thereupon filed suit in the Circuit Court for Prince George's County against Granite-Groves seeking damages for an alleged breach of the oral agreement of June 22, 1977. The court (Blackwell, J.) entered summary judgment for Granite-Groves on November 1, 1978 holding that the oral agreement was not enforceable because it was not supported by consideration. Undeterred, Edelen appealed to this Court and we reversed the trial court in a *per curiam* opinion dated May 29, 1979.[2] For purposes of the present appeal, it is significant that although this Court held that the trial court erred in finding, on the employer's motion for summary judgment, that the oral agreement of June 22, 1977 was unsupported by consideration and remanded the case to the circuit court, we expressly declined to consider appellant's contention that the individual agreement contradicted the working agreement and was therefore a nullity.

On remand, the court below found that the oral agreement of June 22 *was* supported by consideration and awarded a judgment for Edelen in the sum of $15,217.92. On this appeal, Granite-Groves presents three assignments of error, the first of which in our view is dispositive: "The provisions of the working agreement between the union and appellant are exclusive, rendering unenforceable a separate agreement between appellee and appellant which limits, defeats and contradicts its terms."

Although this issue was argued below, the trial court failed to consider it. We find error and reverse.

## II

The crux of the appellant's case is that a collective bargaining agreement between an employer and a union is controlling when there is a conflict between its provisions and the terms of an employment contract. This, indeed, is a correct legal proposition. *E.g., NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175 (1967); *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342 (1944); *J. I. Case Co. v. NLRB,* 321 U.S. 332 (1944). Before applying this prin-

---

2. Edelen v. Granite-Groves, No. 1225 (Md. Ct. Spec. App. May 29, 1979).

ciple to the instant appeal, it may be instructive to note the relationship of individual employment contracts to collective bargaining agreements as explained by the Supreme Court in *J. I. Case Co., supra,* a landmark case, wherein Mr. Justice Jackson stated:

"Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment."

. . .

"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. *But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring.* This hiring may be by writing or by word of mouth or may be implied from conduct. In the sense of contracts of hiring, individual contracts between the employer and employee are not forbidden, but indeed are necessitated by the collective bargaining procedure.

"But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, even if on

his own he would yield to less favorable terms. *The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits. . . ."* (Emphasis added.) *Id.* at 334-36.

The Court further observed, with respect to individual agreements:

"But it is urged that some employees may lose by the collective agreement, that an individual workman may sometimes have, or be capable of getting, better terms than those obtainable by the group and that his freedom of contract must be respected on that account. *We are not called upon to say that under no circumstances can an individual enforce an agreement more advantageous than a collective agreement, but we find the mere possibility that such agreements might be made no ground for holding generally that individual contracts may survive or surmount collective ones. The practice and philosophy of collective bargaining looks with suspicion on such individual advantages."* (Emphasis added.)

*J. I. Case Co. v. NLRB, supra,* 321 U.S. at 338.

In the instant case, appellant and appellee agree that when a conflict arises between a collective agreement and an individual contract, the former must prevail. The lower court, as the trier of fact, found that an individual oral agreement providing for appellee's return to work as shop steward had been made, and that it was supported by consideration. The finding of such an agreement is not here challenged. The issue, then, is whether the terms of the collective agreement and the oral agreement of June 22, 1977 are in conflict.

The appellant-employer cites a number of provisions of the working agreement which the oral agreement of June 22, 1977 is claimed to contradict. These include: Art. I, § 4 (employer makes all hirings through the appropriate union office); Art. IV, § 1 (the business representative of the local

union shall appoint shop stewards, normally from men "on the job"); and Art. IV, § 1 (b) (no displacement of any employee on the job to provide employment for a suitable shop steward where it has been determined there is no employee on the job qualified to act as shop steward).

While there may be merit in appellant's contention with respect to these provisions, we find of overriding significance and, indeed, of controlling effect the provisions of Art. III, § 3 of the working agreement relating to on-the-job injury, upon which appellant also relies. It is important to note that appellee's injury was sustained off the job and was in no way connected with his employment — an eventuality not covered by the collective bargaining agreement. Art. III, § 3 provides as follows:

> "The employers agree that if a laborer is hurt or injured on their job he may go to a doctor of his own choosing for treatment. A reasonable time to receive such treatment will be accorded the injured laborer during any work day on which he reports for work without any loss of earnings resulting from his absence for such treatment. Once the laborer has sufficiently recovered from his injury so as to enable him to return to work, he shall return to the employ of the contractor on whose job he was injured, if work is available, for a period of no less than ten (10) working days. He shall notify the employer when he will be available for work. If no laborers' work is available with his employer, he shall be the first to be employed when the work is available." (Emphasis added.)

It will thus be seen that Art. III, § 3 provides, in effect, that an employee injured on the job may not return to work at a later date unless work is available; here, it is undisputed that work was not available for the appellee. Appellee contends that since the matter deals with a person injured off the job, Art. III, § 3 is not applicable. We do not see it that way.

In our judgment, the effect of allowing Edelen to return to

work after an injury, when no work was available, would afford appellee a right superior to the right given in the working agreement to those injured on the job. There is thus a clear conflict between the separate agreement and the working agreement. Stated another way, the individual agreement would rearrange job availability priorities by allowing those injured off the job to return to work even though no work was available — notwithstanding the fact that a laborer injured on the job could not. Appellant argues with considerable validity that:

"In effect, Appellee is asserting a greater right to return to work than that given to laborers injured on the job. Employees injured on the job, however, under the Working Agreement are given much greater protection and right to return to work than those who suffer off-the-job injuries. This attempt to reorder the basic employment rights in a way contrary to that set forth in the Working Agreement cannot be sanctioned."

Appellee places some emphasis upon the fact that he was a shop steward. He contends that Art. IV, § 1 (d) prevents the appellant from refusing to take Edelen back to work on August 31, 1977 because of his status as shop steward. That section provides:

*"The shop steward shall be the last laborer to be discharged or laid off from the job.* When there is no more laborers' work to be performed on the job and all the laborers have been terminated, the contractor may lay off or discharge the shop steward without first discharging a salaried labor foreman." (Emphasis added.)

We think that the above section cannot be read in isolation but must be read in conjunction with the other provisions of the working agreement. An injury is a separate occurrence for which a provision in the working agreement (Art. III, § 3) is specifically made. Article IV, § 1 (d) does not deal with the consequences facing an injured employee who

attempts to return to work but rather with a discharge or lay-off in the more general sense. Hence, appellee's reliance upon this provision is misplaced.

We conclude that the separate oral agreement would have afforded appellee a right to return to work which would have operated in direct conflict with the terms of the union agreement. In light of our determination, we find it unnecessary to consider appellant's remaining contentions.

*Judgment reversed.*
*Appellee to pay the costs.*