Duncan M. MANNING, Appellant,

v.

Donald BOUTON, Acting Attorney General of the Virgin Islands, and Government of the Virgin Islands, Appellees.

No. 81–2529.

United States Court of Appeals,
Third Circuit.

Argued April 27, 1982.
Decided May 17, 1982.

Duncan M. Manning (argued), pro se.

Richard R. Knoepfel, Asst. Atty. Gen. (argued), Dept. of Law, Government of the Virgin Islands, St. Thomas. V. I., for appellees.

Before GARTH, Circuit Judge, ROSENN, Senior Circuit Judge, and HIGGINBOTH-AM, Circuit Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Duncan M. Manning appeals the entry of summary judgment against him in his action to enjoin the Acting Attorney General of the Virgin Islands from terminating his employment as an Assistant Attorney General. The district court[1] held that Manning should have pursued his claim of wrongful discharge under the grievance procedures contained in the collective bargaining agreement between the Virgin Islands Department of Law and the union representing the Department's Assistant Attorneys General. We agree and thus affirm.

### I.

The essential facts of this case are not in dispute. Manning, an attorney who had practiced law for many years in New York, was hired as an Assistant Attorney General for the Government of the Virgin Islands effective August 6, 1980. The then Attorney General who hired Manning agreed

orally to allow Manning to continue his private practice in New York to permit the orderly "winding down" of that practice, even though V.I.Code Ann. tit. 3, § 117 (Supp.1981) provided that "Assistant Attorneys General ... shall not engage in the private practice of law, nor be associated directly or indirectly with any attorney in private practice."

On November 7, 1980, the Department of Law and the United Industrial Workers of North America entered into a collective bargaining agreement governing the terms and conditions of employment of "[a]ll Assistant Attorneys General and all other attorneys employed by and performing legal services for the Executive Branch of the Government of the Virgin Islands." Agreement art. I, § 1. On December 9, 1980, the Governor of the Virgin Islands signed into law Act No. 4506, which funded the collective bargaining agreement and provided that

[n]otwithstanding any provision of law to the contrary, the conditions of employment of all Assistant Attorneys General and all other attorneys employed by and performing legal services for the Executive Branch of the Government of the Virgin Islands, shall be governed through September 30, 1982, by the terms of the [collective bargaining] agreement....

V.I. Act No. 4506, § 1, 1980 V.I. Acts 242. Article X of the collective bargaining agreement established a grievance procedure, culminating in binding arbitration, which was to be "the exclusive means of settlement of all grievances arising under this Agreement." Agreement art. X, § 20.

On December 30, 1980, the Attorney General who hired Manning resigned, and Donald M. Bouton was named Acting Attorney General. By letter dated February 20, 1981 and addressed to Manning in New York, Bouton dismissed Manning from his position as an Assistant Attorney General, stating:

It has come to my attention that you have been continuously engaged in the

[1.] The Honorable Raymond J. Broderick, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

private practice of law, in violation of the provisions of Section 117, Title 3 of the Virgin Islands Code, over the past six months while being employed on the staff of the Department of Law as an Assistant Attorney General.

In addition to the foregoing, you have not been rendering satisfactory legal services to the Government of the Virgin Islands, either with regard to quality or quantity.

I am therefore terminating your probationary appointment effective March 10, 1981.

App. at 1.

Upon learning of his termination, Manning did not avail himself of the grievance procedures mandated by the collective bargaining agreement. Rather, on March 10, 1981, he filed this action in the district court against Bouton and the Government of the Virgin Islands, seeking a temporary restraining order, preliminary injunction, and permanent injunction against his discharge. The defendants filed a motion to dismiss and hearings were held on March 18 and 20, 1981, at which the motion was treated as one for summary judgment. After the second hearing, on March 20, 1981, the district court granted summary judgment in favor of the defendants. The court filed a memorandum opinion explaining its ruling on May 12, 1981, in which the court stated that Manning should have pursued his grievance in accordance with the provisions of the collective bargaining agreement.

## II.

In this appeal, Manning argues that since he did not join the union or participate in any union activities, he was not required to follow the grievance procedure set forth in the collective bargaining agreement. On the merits, he asserts that V.I.Code Ann. tit. 3, § 117 only prohibits private practice

in the Virgin Islands; that the defendants breached the oral agreement permitting him to continue his New York practice; and that, in any event, Bouton, as a "recess appointee," lacked authority to dismiss him under V.I.Code Ann. tit. 3, § 64(c) (Supp. 1981).

We will not address Manning's arguments on the merits of his discharge because we believe, as did the district court,[2] that the appropriate forum for the resolution of these issues is not the courts but the grievance/arbitration mechanism established by the collective bargaining agreement.

Manning is mistaken in asserting that because he did not join the union, he is not bound by the collective bargaining agreement which makes its grievance/arbitration procedure "the exclusive means of settlement of all grievances." The collective bargaining agreement, enacted into law by the legislature, provides that the union shall be "the sole and exclusive bargaining representative for *all* employees *covered by*" the agreement, which includes all Assistant Attorneys General, whether they are union members or not. Agreement art. I, § 1 (emphasis added). The agreement goes on to provide that "[t]here shall be no individual contracts concerning terms and conditions of employment between the Employer and any Employee covered by this Agreement." *Id.* art. XII, § 34. Thus, it is clear that the collective bargaining agreement governs Manning's employment notwithstanding his attempt to disassociate himself from the union,[3] and that the agreement supersedes the terms of any individual contract Manning previously may have had. *See J. I. Case Co. v. NLRB,* 321 U.S. 332, 338, 64 S.Ct. 576, 580, 88 L.Ed. 762 (1944).

Our conclusion that the negotiation of the collective bargaining agreement supplanted any pre-existing individual contracts is consistent with the policy underlying both the federal and the Virgin Islands labor laws.

---

2. We also agree with the district court that with respect to the questions here presented, there is no genuine issue as to any material fact, and hence summary judgment was appropriate.

3. We note that while Manning rejected the constraints of the collective bargaining agreement, he accepted its benefits. Pursuant to the agreement his salary was increased from $25,000 to $35,000 a year. *See* App. at 33.

As the Supreme Court stated in *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967):

National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees. "Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents. . . ." . . . Thus only the union may contract the employee's terms and conditions of employment, and provisions for processing his grievances; the union may even bargain away his right to strike during the contract term, and his right to refuse to cross a lawful picket line. The employee may disagree with many of the union decisions but is bound by them. "The majority-rule concept is today unquestionably at the center of our federal labor policy." "The complete satisfaction of all who are represented is hardly to be expected. . . ."

(Citations and footnotes omitted.) *Accord, Emporium Capwell Co. v. Western Addition Community Org.*, 420 U.S. 50, 62, 95 S.Ct. 977, 984, 43 L.Ed.2d 12 (1975); *J. I. Case Co. v. NLRB, supra,* 321 U.S. at 338–39, 64 S.Ct. at 580–81.

Likewise, the public employee labor relations act enacted by the Virgin Islands Legislature on June 2, 1980, provides that labor organizations certified by the Virgin Islands Public Employees Relations Board shall "exclusively act for and negotiate agreements with the public employer covering all employees in the bargaining unit *whether or not all employees are members of the labor organization.*" Act No. 4440, § 1, 1980 V.I. Acts 61, 71 (to be codified at V.I.Code tit. 24, § 373(a)) (emphasis added).

Being bound by the collective bargaining agreement, Manning was not free to ignore the procedures it specifies for the pressing of grievances by bringing suit in federal court. What the Supreme Court stated in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965), is relevant in this context:

As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. . . . But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the "common law" of the plant. . . . Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for

orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements."

(Citations and footnotes omitted.) *See also Ryan v. Mansfield State College,* 677 F.2d 344, 346 n.1 (3d Cir. 1982). The district court thus properly rejected Manning's attempt to pursue his employment dispute outside the agreed-upon forum.[4]

### III.

For the foregoing reasons, the judgment of the district court will be affirmed.

---

4. Though we have approved the summary judgment issued by the district court, we express no opinion as to whether, because of the belatedness in the submission of his claim, Manning still has the right to pursue his claim through the grievance procedure of the collective bargaining agreement.