736 F.2d 1388
 116 L.R.R.M. (BNA) 3207, 101 Lab.Cas. P 11,111
 MUSICIANS UNION OF LAS VEGAS, LOCAL NO. 369, AFM, AFL-CIO,
Petitioner- Appellant,
v.
DEL E. WEBB CORPORATION and its subsidiary, Sahara-Nevada
Corporation, a Nevada corporation, d/b/a Sahara
Hotel, Respondents-Appellees.
 No. 83-2286.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1984.
Decided July 10, 1984.
As Amended Sept. 18, 1984.
 
 Dennis M. Sabbath, Las Vegas, Nev., for petitioner-appellant.
 Malani L. Kotchka, Smith, Goold, Kotchka & Trenberth, Las Vegas, Nev., for respondents-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before SNEED and FLETCHER, Circuit Judges, KENYON*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 The Musicians Union of Las Vegas (Union) appeals from the district court's dismissal of its petition to compel arbitration of a grievance filed on behalf of an employee who allegedly was discharged in violation of a collective bargaining agreement. The district court held that the employee had contracted away the benefits secured by the collective agreement. We reverse.
 
 I.
 FACTS
 
 2
 On April 28, 1980, Sahara-Nevada Corporation (Sahara), a subsidiary of Del E. Webb Corporation, signed an employment contract with Jack Eglash providing that he would serve as house orchestra leader for the Sahara Hotel until April 1, 1984. Both parties reserved the right to cancel the contract upon thirty days notice in advance of the stipulated intended cancellation date. Two years later, Sahara purported exercise this option and notified Eglash that the orchestra leader contract would terminate on June 15, 1982.
 
 
 3
 The Union filed a grievance with Sahara claiming that Sahara, by firing Eglash without just cause, had violated the terms of the collective bargaining agreement between the Union and Sahara. Article Seven of the agreement provides that a contract for a definite term of employment cannot be cancelled without just cause. Sahara asserts that the Sahara-Eglash contract was a thing apart from the collective bargaining agreement. Its terms did not apply to the Sahara-Eglash contract. The Union disagrees. It sought to invoke the collective bargaining agreement's arbitration clause. Sahara refused to arbitrate.
 
 
 4
 The Union filed a petition with the district court to compel arbitration. Sahara moved to dismiss and the district court, after examining the two agreements, granted the motion. The district court reasoned that Section 5.03 of the collective bargaining agreement established two conditions that an employment contract must satisfy before the collective bargaining agreement would apply to it.[1] First, the individual contract had to specifically incorporate the terms of the collective bargaining agreement. Paragraph Six of the Sahara-Eglash contract satisfied this requirement. Second, the individual contract also must have provided that the collective bargaining agreement was binding in all circumstances and that any terms inconsistent with the collective bargaining agreement were null and void. The district court held that the Sahara-Eglash contract failed to meet this second requirement and therefore ruled that Eglash was not entitled to the benefits secured by the collective bargaining agreement and granted Sahara's motion to dismiss the Union's petition.
 
 II.
 DISCUSSION
 
 5
 We commence as always in cases of this type by noting that federal labor policy favors the use of arbitration. See United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960). However, an employer cannot be forced to arbitrate a grievance absent a prior agreement providing for arbitration. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Whether the employer has agreed to arbitrate the grievance is for the court, not the arbitrator, to decide, unless the parties clearly indicate a contrary intent. Haig Berberian, Inc. v. Cannery Warehousemen, 535 F.2d 496, 498 (9th Cir.1976). Our function is quite limited, however. "Interpretation of substantive provisions must be left to the arbitrator in the first instance." Laborers International Union Local 252 v. Town Concrete Pipe of Washington, Inc., 680 F.2d 1284, 1285 (9th Cir.), cert. denied, 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982). Furthermore, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Warrior & Gulf Navigation, 363 U.S. at 582-83, 80 S.Ct. at 1353.
 
 
 6
 The arbitration clause between Sahara and the Union covers any "dispute or difference .... regarding the meaning, interpretation or application of the provisions of this Agreement." on The district court held that Eglash contracted away the benefits guaranteed by the collective bargaining agreement. This argument fails as a matter of law. National labor policy rests on the idea that employees can bargain most effectively by pooling their economic strength and negotiating through an elected labor organization. National Labor Relations Board v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967). Consequently, union members necessarily forfeit the power individually to negotiate the terms and conditions of their employment. Id.
 
 
 7
 But usually a collective bargaining agreement between the union and the employer merely establishes the terms and conditions of employment. It does not actually hire employees. J.I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 334-35, 64 S.Ct. 576, 578-579, 88 L.Ed. 762 (1944). An employee represented by the union must be hired under an individual employment contract. However, in the course of entering into this individual contract, the union member and the employer cannot renegotiate the provisions of the collective bargaining agreement. Allis-Chalmers, 388 U.S. at 180, 87 S.Ct. at 2006. Therefore, contrary to the district court's ruling, a member of the union cannot contract away benefits secured by the collective bargaining agreement. J.I. Case, 321 U.S. at 336, 64 S.Ct. at 579; Baker v. Amsted Industries, Inc., 656 F.2d 1245, 1248-49 (7th Cir.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 468 (1982).
 
 
 8
 The district court relied on Alpha Beta Co. v. Retail Store Employees Union Local 428, 671 F.2d 1247 (9th Cir.1982). However, that case is clearly inapposite. Alpha Beta held that, because the union did not agree to extend the collective bargaining agreement's arbitration clause to a subsequent settlement agreement, the employer could not compel the union to arbitrate a dispute arising from that settlement agreement. The employer was bargaining directly with the union. Here, the employer is attempting to bargain with the employee rather than the union. Any agreement they might reach cannot alter the provisions of a collective bargaining agreement; only the union has that power. Allis-Chalmers, 388 U.S. at 180, 87 S.Ct. at 2006; J.I. Case, 321 U.S. at 336, 338, 64 S.Ct. at 579, 580; Baker, 656 F.2d at 1248-49.
 
 
 9
 No one argues that Eglash wah not a member of the collective bargaining unit. Even a vice president can arguably fall within the bargaining unit as long as he is employed to perform musical services. The collective bargaining agreement does not specifically exclude vice presidents from the bargaining unit, and even if it did, Eglash stopped serving as vice president at least three months before Sahara terminated the orchestra leader contract.
 
 
 10
 The judgment of the district court is reversed. The case is remanded with instructions to the district court to grant the Union's petition to compel arbitration of the dispute.
 
 
 11
 REVERSED and REMANDED.
 
 
 
 *
 Honorable David V. Kenyon, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Section 5.03 states:
 Any employment agreement entered into shall specifically incorporate by reference the terms of this Agreement and further shall provide that in all circumstances the terms of any employment agreement entered into shall be subject to this Agreement and any terms of the employment agreement inconsistent with the terms of this Agreement shall be null and void.