SISSETON EDUCATION ASSOCIATION,
Petitioner and Appellant,

v.

SISSETON SCHOOL DISTRICT
NO. 54–8 and its Board of
Education, Appellees.

No. 18127.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1993.

Decided May 11, 1994.

Linda Lea M. Viken of Viken, Viken, Pechota Leach & Dewell, Rapid City, for petitioner and appellant.

Deming Smith, Marie E. Hovland of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees.

MEIERHENRY, Judge.

The Sisseton Education Association (SEA) appeals a circuit court order affirming a South Dakota Department of Labor decision which found that the Sisseton School District did not commit an unfair labor practice. We affirm.

FACTS

In February 1990, the Sisseton School District No. 54–5 and the New Effington School

District No. 54–3 were consolidated as the Sisseton School District No. 54–8 (District). The consolidated District elected a new school board. Contracts between the prior districts and the teacher associations, Sisseton Education Association (SEA) and New Effington Teacher Association, had expired before the consolidation.

Prior to contract negotiations, the Board required SEA to obtain signatures of designation from a majority of teachers. SEA acquired the necessary signatures from the 93 teachers in the district and the Board formally recognized it as the exclusive representative. Eighty seven teachers were part of the SEA before the merger; 5 teachers were from the New Effington Teacher Association.

Since 1983, the prior Sisseton School District and SEA were operating under an agreement which contained the following language:

(1) The Board reserves the right to go over and above (salary) schedule when they [sic] deem it necessary.

In practice, the Sisseton School District had used this provision once when it was having trouble finding a teacher to fill a position.

During the contract negotiations after consolidation for the 1990–91 school year, the District proposed that the language of the prior Sisseton School District contract be included in the future employment contract; SEA, however, opposed the language. Negotiations concerning the language reached an impasse and the Department of Labor was asked to conciliate.

After a hearing conducted pursuant to SDCL 3–18–8.1, the labor department fact finder recommended that the language be excluded from the agreement. The District rejected the recommendation and unilaterally included the language. SEA then filed an unfair labor practice complaint with the Department of Labor.

The Department of Labor found that the unilateral imposition of this language constituted an unfair labor practice because the New Effington teachers did not have a similar agreement with the New Effington board, nor had the board exercised such authority

as a past practice. Shortly thereafter, the Sisseton School District discovered that the New Effington School District and the New Effington Education Association had been operating under an agreement in 1988 and 1989 which contained a similar provision. The New Effington provision stated:

The Board reserves the right to go above schedule when supply and demand deem it necessary.

The District appealed to circuit court requesting a remand based upon the newly discovered evidence. The circuit court remanded the matter to the Department of Labor to consider the new evidence. After consideration, the Department of Labor reversed its earlier decision and concluded that the District had not committed an unfair labor practice. SEA appealed the decision to circuit court which affirmed the Department's ruling.

### STANDARD OF· REVIEW

■ The scope of review for administrative decisions is governed by SDCL 1–26–36. The agency's findings of fact will not be overturned unless they are clearly erroneous. *Oberle v. City of Aberdeen,* 470 N.W.2d 238, 241 (S.D.1991) (citing *Sharp v. Sharp,* 422 N.W.2d 443, 447 (S.D.1988); *Permann v. Department of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113, 116–17 (S.D.1987)). Conclusions of law determined by the agency are fully reviewable. *Oberle,* 470 N.W.2d at 241 (citations omitted). The issues presented to this Court are legal issues and fully reviewable.

### ISSUE

DOES IMPOSITION OF LANGUAGE ALLOWING THE SCHOOL BOARD TO GO OVER AND ABOVE THE SALARY SCHEDULE WHEN THE BOARD DEEMS IT NECESSARY CONSTITUTE AN UNFAIR LABOR PRACTICE UNDER SDCL 3–18–3.1?

■ "It shall be an unfair labor practice for a public employer to: (1) Interfere with, restrain or coerce employees in the exercise of rights guaranteed by law. . . ." SDCL 3–18–3.1 SEA maintains that the Board's uni-

lateral implementation of the contract language allowing it to go over and above salary schedule denies the teachers' statutory right to negotiate wages and is, therefore, an unfair labor practice.

The law requires public employers to negotiate matters of pay, wages, hours of employment, or other conditions of employment. SDCL 3–18–3. If the parties are unable to reach an agreement, either may request that the Department of Labor conciliate. SDCL 3–18–8.1. If conciliation does not settle the dispute, either party may request that the labor department investigate and make a report of the issues and a recommendation for settlement. SDCL 60–10–2. If the process does not result in a settlement, the school board is, at least, required to implement its last offer. "If no agreement is reached in negotiations and the intervention of the labor department under § 3–18–8.1 fails to bring about an agreement, the board shall implement, as a minimum, the provisions of its last offer, including tentative agreements...." SDCL 3–18–8.2.

Courts in applying statutes similar to SDCL 3–18–8.2 generally allow unilateral implementation of provisions on impasse if the parties have bargained in good faith over the mandatory subjects. The first question is whether the provision in controversy is a mandatory subject of bargaining; secondly, whether the employer has bargained in good faith; and thirdly, whether the parties have reached a bona fide impasse. *Oberle*, 470 N.W.2d at 242; *Detroit Police Officer's Ass'n v. City of Detroit*, 391 Mich. 44, 214 N.W.2d 803, 809 (1974); *Colorado–Ute Elec. Ass'n, Inc. v. NLRB*, 939 F.2d 1392, 1405 (10th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 223 (1992); *NLRB v. American Nat'l Ins. Co.*, 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952).

■ A public employer "while under a duty to negotiate in good faith, [is] not required to agree to a contract or any specific rates of pay, wages, hours of employment or other conditions of employment." *South Dakota Bd. of Regents v. Heege*, 428 N.W.2d 535, 541 (S.D.1988).

In the context of wage negotiations, therefore, while an employer cannot use its economic power to remove a subject completely from the bargaining table, it is not compelled to agree to the union's wage terms. That being the case, the union does not enjoy a unilateral veto over wage terms, and the employer may try to achieve the wage terms it desires by using its economic weapon of implementing at impasse. *See [NLRB v.] Katz*, 369 U.S. [736] at 745 & n. 12, 82 S.Ct. [1107] at 1113 & n. 12, [8 L.Ed.2d 230 (1962) ]; *Newspaper Printing Corp. v. NLRB*, 625 F.2d 956, 966 (10th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981). Consistent with the Act, this right exists irrespective of the parties' bargaining positions. *See American Nat'l Ins. Co.*, 343 U.S. at 401–02, 72 S.Ct. at 828.

*Colorado–Ute Elec. Ass'n Inc.*, 939 F.2d at 1404.

There is no dispute that the District had negotiated in good faith over a mandatory item, i.e. wages. The parties could not agree on the District's proposal allowing the District to go above salary schedule when it deemed necessary. When the impasse was reached, the parties attempted conciliation, but the parties were still unable to reach agreement. The District then implemented its last offer which included the contested provision.

SEA argues that the salary provision which the Board unilaterally imposed gives the Board unfettered discretion to adjust teacher salaries whenever and for whatever reason the Board desires, which in effect, would abrogate the teachers' right to bargain. SEA envisions situations where the Board might by-pass offering a position to a qualified teacher already in the District in order to hire the principal's relative, the new coach's spouse, or a friend of a school board member.

The contract provision does not give the Board unfettered discretion. The provision only allows the Board to go above the salary schedule when it deems it is necessary. In carrying out its responsibility of insuring a fully staffed and qualified teaching faculty, the Board is bound to an objective standard of necessity when implementing this provi-

sion. If the Board applies the provision subjectively or for the specific purpose of obviating the salary schedule, it would be subject to grievance or unfair labor practice proceedings. In comparison, the prior districts had only used this provision once in the past, when one of the districts was having difficulty filling a mandatory teaching position.

 Both the department and the circuit court relied on the past practice of the districts in determining whether the Board's action was an unfair labor practice. Past practice, in this case, does not bind the District or SEA because the District is not a successor to the old district. In determining successorship, we adopt the two-step successor test reaffirmed in the United States Supreme Court in *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 46–47, n. 12, 107 S.Ct. 2225, 2237, n. 12, 96 L.Ed.2d 22 (1987) and set forth in *NLRB v. Burns Security Service*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). First, the new employer must be the old employer's successor in fact; and secondly, the majority of the successor's employees must be employed by the predecessor employer. Only if both requirements are met may successorship liability be imposed. *See M.E.A. v. N. Dearborn Heights School Dist.*, 169 Mich.App. 39, 425 N.W.2d 503, 507 (1988).

Based upon the facts, the two-part test fails in the instant case. The new employer District is not a successor in fact to either of the previous districts. The prior districts, Sisseton School District No. 54–5 and the New Effington School District No. 54–3 ceased to exist when the Sisseton School District No. 54–8 was created. The new District became a distinct legal entity with different geographical boundaries, a larger student body, and a newly elected Board. Neither the Board nor the teachers considered themselves bound by pre-existing contracts or relationships. In fact, the new Board required SEA to acquire authorization from the majority of New Effington and Sisseton teachers in order to be recognized as the negotiating body for the teachers of the new District. Only after acquiring 93 teacher signatures was SEA formally designated. Under these circumstances, the first

requirement of being a successor in fact of the two-step successor test fails; and since both requirements must be met in order to find successorship, we find that the new District is not a successor to either of the prior districts. The past practice of the prior districts or the prior teacher associations is not determinative of an unfair labor practice when the parties are not successors in fact.

Nevertheless, the Board bargained in good faith to a bona fide impasse and was entitled under SDCL 3–18–8.2 to implement its last offer. We therefore affirm the circuit court.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.

MEIERHENRY, Judge, for HENDERSON, J., disqualified.