Unified Judicial System

 

 
 Gettysburg School District 53-1
Plaintiff and Appellant v.
Catherine H. Larson
Defendant and Appellee [2001 SD 91]
South Dakota Supreme Court
Appeal from the Circuit Court of The Sixth Judicial Circuit
Potter County, South Dakota
Hon. Max A. Gors, Judge
Craig E. Smith
Neumayr & Smith
Gettysburg, South Dakota
Attorneys for plaintiff and appellant
 
Brent A. Wilbur
Neil Fulton
May, Adam, Gerdes & Thompson
Pierre, South Dakota
Attorneys for defendant and appellee
 
Considered on Briefs May 29, 2001
Opinion Filed 7/11/2001
#21750
KONENKAMP, Justice
[Â¶1.] In this administrative appeal, we review the Department of Laborâs ruling that the Gettysburg School District violated its reduction in force (RIF) policy.  The school district contends that it was not required to comply with its RIF policy, but if it was, it followed the correct protocol.  In addition, the district claims that the department was without jurisdiction to hear the grievance and without authority to reinstate the released teacher.  Because the school district agreed to the RIF policy as part of its collective bargaining agreement with the teachersâ union, and because the district released a teacher by virtue of the RIF policy, the district was bound to abide by the policy.  We affirm. 
Background
[Â¶2.] In the spring of 1999, the superintendent of the Gettysburg School District, under budgetary constraint, recommended a reduction in force to the school board.  The necessity was undisputed.  At a meeting on March 8, 1999, the board adopted the recommendation and decided to reduce one certified elementary teacher, âwith no reduction in coaching positions.â
[Â¶3.] After passing a resolution, the board notified the Gettysburg Teachers Association of its decision.  The association was the sole bargaining agent for all âregularly employed certified personnel,â under a collective bargaining agreement with the school district.  Article IX of that agreement set out mandatory procedures for the board to follow in implementing a reduction in force.  The first step required that the association have an opportunity to present alternatives.  The next steps are set out below:
2.         Efforts to bring about the required reduction through normal attrition, e.g., resignations and retirement, will be exerted.
 
3.         If normal attrition does not satisfy the need then teachers with less than full certification . . . shall be released first.
 
4.         Teachers who have not achieved continuing contract status will be released.
 
5.         Teachers who have achieved continuing contract status will not be released unless the required reduction is not achieved in numbers 1, 2, 3.
 
6.         In the application of numbers 1, 2, 3, and 4 above, the principle of seniority will be utilized when the qualifications of two or more teachers are substantially equal.  Length of service within the school system will determine the order of release[.]
 
The necessary reduction could not be accomplished through either resignation or retirement, and no teacher held less than a full certification.  Consequently, Catherine Larson and Bryan Zahn, two teachers without continuing contract status, were notified that they were subject to release.
[Â¶4.] Catherine Larson had held a full-time teaching contract with the school district for the years 1997-98 and 1998-99.  She had also been employed as a certified substitute teacher for the 1993-94 school year.[1]   As a certified substitute teacher, Larson taught the entire school year in one classroom and taught summer school under contract in 1995.  She performed intermittent substitute teaching from 1995 until her next full-time contract in 1997.  On the other hand, Bryan Zahn had held a full-time teaching contract with the district for three consecutive school years:  1996-97, 1997-98, 1998-99.  
[Â¶5.] Under the districtâs RIF policy, the board would decide which of the two teachers to release.  Because neither had attained continuing contract status, the board was required to set the order of release by âlength of service.â  Delane Thom, the school board chair, explained that because Zahn would attain continuing contract status first, he had seniority and therefore would retain his position.  According to Thom, the board did not consider Larsonâs substitute service in making its decision.  The school boardâs reasoning was confirmed in its resolution:  âThe board further finds that Bryan Zahn has three continuous years as a certified teacher under the negotiated agreement and is therefore entitled to preference.â[2]   Thom later declared that coaching âhad nothing to do . . . with the actual decisionâ to retain Zahn and release Larson.
[Â¶6.] Larson appealed to the school board as provided in the districtâs negotiated agreement.  The board ruled that Larsonâs 1993-94 service could not be reckoned in calculating seniority under the negotiated agreement; consequently, Zahn had the greater length of service.  For the board, the decision to release Larson âwas based solely on the reduction in force policy.â  Larson appealed to the Department of Labor.  The department ruled that the RIF policy was binding on the school district and that the policy clearly and unambiguously measured seniority by 
âlength of service,â not âcontinuous length of service.â  Thus, Larsonâs âlength of serviceâ was greater, considering all her previous service as a regular and a substitute teacher.  On appeal, the circuit court affirmed.  The district now appeals on six issues, which we consolidate into three.[3] 
Standard of Review
[Â¶7.] Our scope of review in an administrative appeal is governed by SDCL 1-26-36.  In examining an agency decision, we apply the same standard as the circuit court, with no assumption that the courtâs decision was correct.  Cheyenne River Sioux Tribe Tel. Auth. v. Public Utilities Commân, 1999 SD 60, Â¶12, 595 NW2d 604, 608 (citing Appeal of Templeton, 403 NW2d 398, 399 (SD 1987)).  We will not overturn any agency fact findings absent clear error.  Sisseton Education 
Assân v. Sisseton Sch. Dist., 516 NW2d 301, 302 (SD 1994)(citations omitted).  Conclusions of law are fully reviewable.  Id.
1.  Obligation to Follow RIF Policy
[Â¶8.] The district contends that it is not bound to follow its RIF policy because SDCL 13-43-6.6 provides that âno agreement may limit the districtâs right to terminate a teacher for the grounds set forth in Â§Â§ 13-43-6.1 to 13-43-6.3[.]â  This is correct, but only when a teacher is discharged or nonrenewed by authority of these statutes.  SDCL 13-43-6.3 allows nonrenewal of a nontenured teacherâs contract without requiring a reason.  Here, Larson was released under the RIF policy, not the nonrenewal statute.  The district suggests that this statute allows it somehow to bypass its RIF policy, although the district specifically decided to release a teacher under that RIF policy.[4]   This argument is against reason and precedent.
[Â¶9.] The district made it clear that its action was a reduction in force and not a decision for contract nonrenewal under SDCL 13-43-6.3.  The official letter sent to Larson notified her that it was âthe judgment of the Gettysburg Board to nonrenew your contract under Article IX of the GTA Negotiated Agreement Reduction in Force Policy[.]â  Similarly, the boardâs resolution and its final decision both declare the reduction in force as the sole reason for Larsonâs release.  
[Â¶10.] Undoubtedly, the school district released Larson under its RIF policy.  A school boardâs power to nonrenew a teacherâs contract without explanation is not at issue here.  By acting under the RIF policy, the district must abide by its terms.  Wessington Springs Educ. Assân v. Wessington Springs School Dist., No. 36-2, 467 NW2d 101, 104 (SD 1991)(citations omitted).[5] 
2.  Compliance with RIF Policy
[Â¶11.] Disputes over the meaning of terms in teacher contracts are resolved under the general principles of contract law.  Id.  If the RIF policy in the negotiated agreement is clear and unambiguous, we cannot go beyond its provisions.  See id. (citing AFSCME Local 1922 v. State, 444 NW2d 10, 12 (SD 1989))(further citations omitted).  Contracting parties are held to the terms of their agreement, and disputes cannot be resolved by adding words the parties left out.  See Wessington Springs Educ. Assoc., 467 NW2d at 104.  
[Â¶12.] The districtâs collective bargaining agreement with the Gettysburg Teachers Association enumerates a specific protocol for implementing a reduction in force.  Article IX of the agreement states that â[i]n the event it becomes necessary in the judgment of the board to reduce the number of teachers . . . the board shall follow the procedures as listed.â  If the necessary reduction cannot be accomplished through normal attrition, teachers without continuing contract status (tenure) can be released.  In calculating the order of release, the RIF policy employs the âprinciple of seniority,â measured by the âlength of service within the school system.â
[Â¶13.] The board found that Zahn was the more senior employee because he had three continuous years of service.  Larson, on the other hand, had two continuous years of service.  According to the school board chair, because Zahn would attain continuing contract status first, he was more senior.[6]   The department concluded that this interpretation went against the plain and unambiguous language of the RIF policy:  â[t]he contract requires that a reduction in force be determined by length of service, not continuous length of service.â  (Emphasis added.)  Counting Larsonâs service during the 1993-94 school year, her summer school service, and her two sequential contracts, she had a greater âlength of service.â
[Â¶14.] A school board cannot rewrite an incompletely specified agreement, inserting or deleting to make it mean more than its words plainly declare.  Wessington Springs Educ. Assoc., 467 NW2d at 104.  The RIF policy includes no expression like âcontinuousâ or âuninterruptedâ to define length of service.  See id.  These terms could have been adopted when the agreement was made, if the parties had wanted them.  Similar qualifying phrases are commonly found in other public school agreements.  
Id. at 102; see e.g. Mackey v. Newell-Providence Comm. School Dist., 483 NW2d 5, 8 (IowaCtApp 1992)(RIF policy gives preference to teacher with greater continuous length of service); Dykeman v. Board of Educ. of Dist. of Coleridge, 316 NW2d 69, 70 (Neb 1982)(RIF policy instructs school board to consider length of uninterrupted service).  Certainly, the departmentâs interpretation of the RIF policy was coherent.  Some school systems specifically grant seniority credit for full-time substitute teaching even if the substitute position does not immediately precede a regular full-time contract.  See e.g. Kransdorf v. Board of Educ. of Northport-East Northport Union Free School, 613 NE2d 537, 538-39 (NY 1993).
[Â¶15.] The school district advances two further arguments.  First, it claims that the department failed to consider extracurricular activities, such as Zahnâs coaching, when making its decision.  With Zahnâs coaching activity, the district alleges that the two employees are not substantially equal under the RIF policy, and a length of service analysis is not required.  The district did not make this argument to the department; consequently, we will not address it on appeal.  See Grand State Property, Inc. v. Woods, Fuller, Shultz & Smith, 1996 SD 139, Â¶19, 556 NW2d 84, 88 (citations omitted).  We note in passing, however, that the districtâs own witness testified that the decision was based on continuous service, not on coaching.
[Â¶16.] Second, the district asserts that even if Larsonâs 1993-94 contract can be included in calculating her seniority, her days of summer school teaching and random substitute teaching cannot.  Larson taught summer school under the districtâs written contract.  Absent any limiting language in the contract, it cannot be held as a matter of law that summer school teaching is not âserviceâ within the district.
3.  Department of Laborâs Authority to Reinstate
[Â¶17.] The school district argues that the department lacked the authority to grant reinstatement as a remedy in this case.  According to the district, Fries v. Wessington School Dist. No. 2-4, 307 NW2d 875 (SD 1981), supports its contention.  On the contrary, Fries specifically held that the department possesses the authority to order reinstatement of a nontenured teacher under certain circumstances.  Id. at 877.  Fries simply cautions that an order of reinstatement cannot confer rights of tenure on a teacher who has not reached continuing contract status.  Id. at 879.  Under SDCL 3-18-15.2, the department has the authority to order reinstatement as of the date Larson was improperly released.  That authority does not infringe on school board autonomy; it requires a board to follow the procedures it contractually adopted.  Id.
[Â¶18.] Affirmed.
[Â¶19.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur. 

[1].         Larson was given the same benefits as a full-time teacher for her long-term substitute position.  These benefits included sick days, personal days, insurance, and South Dakota retirement.

[2].         Another board member testified that âbased on the reduction in force policy . . . we went down the line and continuing years of service is the way it was presented to us and that was our interpretation.â (emphasis added).

[3].         The districtâs jurisdictional challenge is without merit.  It relies on Jensen v. Bonesteel-Fairfax School District No. 26-5, 473 NW2d 467 (SD 1991).  There, we found that the department was without jurisdiction to hear a teacherâs challenge of her nonrenewal under SDCL 13-43-10.2.  Id. at 470.  This statute has been repealed, and the case is distinguishable.  Larson challenges the application or interpretation of a provision in the collective bargaining agreement under SDCL 3-18-15.2.
SDCL 3-18-15.2 provides for an appeal to the department when a public employeeâs grievance remains unresolved.  See SDCL 3-18-15.2.  A grievance is defined by statute as âa complaint by a public employee . . . based on alleged violation, misinterpretation, or inequitable application of any existing agreements, contracts, [or] ordinances . . . of the State of South Dakota or . . . of the public schools, or any authority, commission, or board . . . as they apply to the conditions of employment.â  See SDCL 3-18-1.1.   

[4].         The department also concluded that the RIF policy was part of a binding contract between the district and the teacherâs association, and thus SDCL 13-43-6.6 did not relieve the district of its bargained for duty to abide by the RIF protocol.  We review this question de novo as an issue of law.  See Zoss v. Dakota Truck Underwriters, 1998 SD 23, Â¶4, 575 NW2d 258, 260 (citations omitted).  SDCL 13-43-6.4 provides that in releasing a teacher âdue to a reduction in staff, only written notice is required. . . .â  This statute, unlike Â§Â§ 13-43-6.1 to 13-43-6.3 inclusive, does not override the provisions of a collective bargaining agreement in favor of a school district's termination rights.  SDCL 13-43-6.6.

[5].         The district asserts that Murphy v. Pierre Independent School Dist. No. 30-2, 403 NW2d 418 (SD 1987) supports its position.  In Murphy the teacher was not subject to a reduction in force and instead was informed that her contract would not be renewed.  Id. at 418-19.  Murphy stands for the proposition that a school board is not required to proceed under a RIF policy simply because it is in place.  Id. at 420.  Instead, a district could choose not to renew a nontenured teacher.  Id.

[6].         Continuing contract status is a statutory term.  SDCL 13-43-6.3 requires that teachers receive four consecutive contracts before they can attain such status.