2002 SD 55

**COUNCIL OF HIGHER EDUCATION, Petitioner and Appellee,**

v.

**SOUTH DAKOTA BOARD OF REGENTS, Respondent and Appellant.**

Nos. 21932, 21938.

Supreme Court of South Dakota.

Considered on Briefs Nov. 13, 2001.

Decided May 8, 2002.

Anne Plooster of Council of Higher Education–Special Schools, Pierre, South Dakota, Attorney for petitioner and appellee.

James F. Shekleton of South Dakota Board of Regents, Pierre, South Dakota, Attorney for respondent and appellant.

Thomas H. Harmon of Tieszen Law Office, Pierre, South Dakota, Attorneys for amicus curiae Associated School Boards of South Dakota.

KERN, Circuit Judge.

[¶ 1.] The Council of Higher Education Special Schools (COHE) and the South Dakota Board of Regents (BOR) were involved in teacher employment negotiations in 1999 and unable to come to an agreement. As a result, COHE declared an impasse and BOR imposed its final offer, which more than doubled the damages recoverable in the liquidated damages clause of the contract. COHE then filed a complaint with the Department of Labor (Department) alleging that the unilateral imposition of liquidated damages violated SDCL 53–9–4 and 53–9–5 and constituted an unfair labor practice by BOR. Department found SDCL 53–9–4 and 53–9–5 inapplicable to collective bargaining agreements, reasoning these agreements were not contracts. Department also determined no unfair labor practice violation occurred. COHE appealed to the circuit court. The circuit court reversed Department's determination that collective bargaining agreements are not contracts, but affirmed Department's decision that no unfair labor practice had occurred. We concur that these agreements are contracts, but reverse the trial court's determination that SDCL 53–9–4 and 53–9–5 are applicable in their entirety, and hold that SDCL 3–18–8.2 permits implementation of Board's final offer, including the liquidated damages clause. The issue regarding unfair labor practices has been withdrawn by COHE.

## FACTS AND PROCEDURE

[¶ 2.] COHE is the recognized, exclusive and continuous bargaining agent for the public employees teaching at the special schools in the State of South Dakota. BOR is the constitutional body, which was established by the South Dakota Constitution, Article XIV, § 3, to govern state educational institutions, under the rules and restrictions provided for by the South Dakota Legislature. The dispute between COHE and BOR began during the close of the 1999 collective bargaining negotiations addressing the terms and conditions of

employment for the fiscal year 2000. BOR proposed an increase in the amount of liquidated damages assessed to teachers. These damages would be assessed to teachers who broke their individual employment contracts less than thirty days before the start of the school year. COHE rejected the proposal and did not seek intervention by Department. COHE then orally declared an impasse on September 1, 1999 and delivered a written declaration of impasse on September 9, 1999. Relying on SDCL 3–18–8.2, BOR voted to impose its final offer with an implementation date of September 13, 1999. BOR's final offer raised the liquidated damages to $85 per day up to a maximum amount of $2400. The previous liquidated damages agreement had a penalty of $35 per day up to a maximum amount of $1000.

[¶ 3.] On November 10, 1999, COHE filed a complaint with Department against BOR for unfair labor practices, basing the complaint on BOR's unilateral increase of liquidated damages. COHE argued that the liquidated damages clause could not be imposed because of the restrictions under SDCL 53–9–4 and 53–9–5, which prohibit imposition of liquidated damages clauses absent agreement by the parties.

[¶ 4.] The parties stipulated to the facts alleged in the complaint. On June 26, 2000, Department determined SDCL 53–9–4 and 53–9–5 were inapplicable to collective bargaining agreements, reasoning that collective bargaining agreements are not contracts. Department also determined that BOR had followed statutory procedures in imposing its final offer. Accordingly, the Department found that BOR had not committed unfair labor practices.

[¶ 5.] COHE appealed to the circuit court. The circuit court determined BOR had indeed followed the statutory procedures in imposing its final offer, but re-versed Department's decision regarding the applicability of SDCL 53–9–4 and 53–9–5 to collective bargaining agreements. The circuit court determined collective bargaining agreements are contracts, and found that the language of SDCL 53–9–5 applies to every contract. BOR appealed to this Court on May 9, 2001. Associated School Boards of South Dakota filed an amicus curiae brief in support of BOR.

## STANDARD OF REVIEW

[¶ 6.] The parties have stipulated to the facts in this case. Accordingly, this Court reviews the issues on a de novo basis. *Webster Educ. Ass'n v. Webster Sch. Dist. No. 18–4*, 2001 SD 94, ¶ 4, 631 N.W.2d 202, 204.

## ANALYSIS AND DECISION

### Collective Bargaining Agreements

[¶ 7.] South Dakota law provides public employees with the opportunity to bargain collectively with their employers. SDCL ch 3–18. This process "requires public employers to negotiate matters of pay, wages, hours of employment, or other conditions of employment." *Sisseton Educ. Ass'n v. Sisseton Sch. Dist. No. 54–8*, 516 N.W.2d 301, 303 (S.D.1994) (citing SDCL 3–18–3). Department of Labor conciliation may be requested by either party when an agreement cannot be reached. SDCL 3–18–8.1. If that assistance does not provide a resolution, the parties may ask the Department of Labor to investigate the situation and make a report with settlement recommendations. SDCL 60–10–2. If an agreement is still not reached, the employer is required to impose its final offer, provided that the subject is a mandatory subject of bargaining, the employer has negotiated in good faith and a genuine impasse has been reached. SDCL 3–18–8.2. Accordingly,

the employer is not allowed to use its economic power to remove a subject from bargaining, but the employer is also not required to agree with the union's terms. Rather, the employer attempts to achieve its goals by imposing the final offer. This process prevents the union from having a unilateral veto over the terms that the employer desires, from thwarting governmental objectives, and from disturbing the efficiency of governmental operation. This process also prevents the employer from imposing its terms without first negotiating in good faith. *Sisseton Educ. Ass'n*, 516 N.W.2d at 303.

### The Applicability of SDCL 53–9–4 and 53–9–5 to Collective Bargaining Agreements

[¶ 8.] Appellant argues, and Department concluded that SDCL 53–9–4 and 53–9–5 are not applicable to collective bargaining agreements. SDCL 53–9–4 provides:

Penalties imposed by contract for any nonperformance thereof are void. This section does not void obligations penal in form such as heretofore have been commonly used, but voids their penal clauses.

SDCL 53–9–5 provides:

Every contract in which amount of damage or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount presumed to be the damage for the breach in cases where it would be impracticable or extremely difficult to fix actual damage.

Department based its opinion on the premise that labor agreements are agreements concerning the terms that will be offered to individual employees, and accordingly "operate on a different legal plane than the private contracts addressed in SDCL 53–

9." Department, relying upon *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), concluded that SDCL ch 53–9 applies only to individual private contracts and would not apply to non-contractual collective bargaining agreements.

[¶ 9.] In *J.I. Case Co.*, the United States Supreme Court addressed the issue of whether or not individual employees were able to form individual contracts with their employer when a union had been formed and was acting as the employees' representative. In determining that generally a union agreement would preempt an individual contract, the U.S. Supreme Court discussed the unique nature of collective bargaining agreements. The Court stated:

Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment.

*J.I. Case Co.*, 321 U.S. at 334–35, 64 S.Ct. at 579, 88 L.Ed. 762.

[¶ 10.] Department, relying on this language, found trade agreements were not contracts. The circuit court reversed Department's decision and found that trade agreements were contracts under South Dakota law. We agree. The uniqueness of a trade agreement may make it something different than an employment contract, but the trade agree-

ment remains a contract between the union and the organization. This Court has previously applied general principles of contract law to disputes involving trade agreements. In *Gettysburg Sch. Dist. No. 53–1 v. Larson*, 2001 SD 91, ¶ 11, 631 N.W.2d 196, 200, we held that "[d]isputes over the meaning of terms in teacher contracts are resolved under the general principles of contract law." In *Wessington Springs Educ. Ass'n v. Wessington Springs Sch. Dist. No. 36–2*, 467 N.W.2d 101, 104 (S.D.1991) we found that "[t]he contracts negotiated between public school districts and teachers are like any other collective bargaining agreement, and disputes over the agreement are resolved with reference to general contract law."

[¶ 11.] The circuit court, having determined these agreements were contracts, applied SDCL 53–9–5, which prohibits unilateral imposition of liquidated damages provisions in every contract. In analyzing this question however, we must also address the applicability of SDCL 3–18–8.2, which sets out the legislative scheme for collective bargaining in South Dakota. SDCL 3–18–8.2 provides:

> Any school district issuing contracts to teachers for the ensuing year, but prior to reaching agreement with the representatives of the recognized employee unit, shall issue the contracts under the same terms and conditions as for the current year. If no agreement is reached in negotiations and the intervention of the labor department under § 3–18–8.1 fails to bring about an agreement, the board shall implement, as a minimum, the provisions of its last offer, including tentative agreements. If the labor department is not requested to intervene under the provisions of § 3–18–8.1, the board shall implement the provisions of its last offer, including tentative agreements, eleven days after an impasse is declared.

[¶ 12.] In the event an impasse is declared and an intervention is not requested, the board is required to implement its last offer, including tentative agreements that the union has not agreed upon. This provision specifically allows a contract to be formed without the express consent of the COHE representatives. This formation of contract without express consent creates a conflict of laws. This conflict arises in SDCL 53–3–1, which requires that the consent of the parties in a contract must be free, mutual and communicated to each other. Likewise, and more applicable to the case at hand, SDCL 53–3–4 and 53–3–5 both contain consent requirements.

[¶ 13.] The conflict is clear in this case. Although normally consent to a liquidated damages clause is required from both parties, when an impasse has been declared and liquidated damages are part of the board's final offer, liquidated damages may be imposed without the union's consent. The plain meaning and application of SDCL 3–18–8.2 requires this result. By permitting the imposition of unilateral contracts after an impasse, the legislature implicitly created an exception of sorts to the general rules regarding mutual consent in contract. Because SDCL 3–18–8.2 does not specifically state that it has no effect on the requirements of SDCL 53–9–4 and 53–9–5, it is this Court's determination that SDCL 3–18–8.2 has a broad application to all consent requirements in contract law.

[¶ 14.] However, this is not to say that SDCL 53–9–5 is entirely trumped by SDCL 3–18–8.2. When two statutes are in apparent conflict with one another, the laws of statutory construction require them to be read in harmony if possible. *Faircloth v. Raven Indus. Inc.*, 2000 SD 158, ¶ 7, 620 N.W.2d 198, 201. Further-

more, the law disfavors statutory repeal by implication. *Id.* at ¶ 10, 620 N.W.2d at 202 (citing *Morton v. Mancari et al.*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290, 300 (1974)). Accordingly, although the consent aspect of SDCL 53–9–5 is in conflict with the provisions of SDCL 3–18–8.2 allowing unilateral imposition of liquidated damages, other aspects of SDCL 53–9–5 survive. The last part of SDCL 53–9–5 provides that liquidated damages may be assessed "where it would be impracticable or extremely difficult to fix actual damage." Nothing in SDCL 3–18–8.2 conflicts with this notion. SDCL 3–18–8.2 merely allows the liquidated damages to be assessed regardless of consent from both parties. Accordingly, SDCL 3–18–8.2 limits the applicability of SDCL 53–9–5 to collective bargaining agreements only to the extent that consent is normally required for liquidated damages clauses. This impasse rule has no effect on the rule of SDCL 53–9–5 that only allows liquidated damages where it is impracticable or extremely difficult to fix the actual damages.

[¶ 15.] This ruling does not leave COHE completely without protection against liquidated damages clauses. The case law and statutory scheme involving collective bargaining agreements includes built-in protections for COHE in an impasse situation. BOR is required to negotiate in good faith. SDCL 3–18–3.1(5). If the negotiations are not done in good faith, BOR faces claims for unfair labor practices. SDCL 3–18–3.1. Prior to the declaration of impasse, COHE has the option of seeking intervention by Department. SDCL 3–18–8.1. Additionally, the latter part of SDCL 53–9–5 dealing with the impracticability of fixing actual damages provides another avenue of protection against liquidated damages clauses. Accordingly, this Court's determination that the consent requirements of SDCL 53–9–4 and 53–9–5 do not apply to collective bargaining agreements, does not leave COHE completely unprotected from unfair or outrageous liquidated damages clauses.

[¶ 16.] The negotiations between BOR and COHE are negotiations between public officers and public employees. There is a strong public interest in preventing strikes by public employees in order to ensure efficient government functioning. SDCL 3–18–10. This is one of the driving forces behind the impasse rule. Impasse allows the negotiations process to continue, and emphasizes good faith negotiations by both sides. Impasse forces COHE to negotiate in good faith because it prevents COHE from failing to bargain and prevents it from unilaterally vetoing the terms submitted by BOR through strike. Impasse also requires BOR to negotiate in good faith because COHE can bring forth an unfair labor practices complaint if negotiations are in bad faith. SDCL 3–18–3.1.

[¶ 17.] It is important to consider the logical extension of the circuit court's determination. If collective bargaining agreements as contracts were susceptible to the mutual consent requirements of SDCL ch 53–9, the effect would be a total eradication of the impasse process. The impasse procedures provided for in SDCL ch 3–18 were put into effect to specifically address the stalemate problem that arises in negotiations. Applying SDCL ch 53–9 to the detriment of the impasse rule would prove disadvantageous to the collective bargaining process.

[¶ 18.] Although unilateral imposition of liquidated damages clauses are disfavored, built-in protections exist in the collective bargaining process. Additionally, society's interest in preventing public employees from stalling negotiations is an essential policy consideration rooted deeply in the law of collective bargaining.

SDCL 3–18–10. Because the language of SDCL 3–18–8.2 provides for the formation of contracts without mutual consent, the consent requirements of SDCL 53–9–4 and 53–9–5 do not apply to collective bargaining agreements. If the legislature intended the consent requirements of SDCL 53–9–4 and 53–9–5 to apply to collective bargaining agreements even in the face of SDCL 3–18–8.2, it certainly could have provided so.

## CONCLUSION

[¶ 19.] For the previously stated reasons, we affirm the circuit court's conclusion that collective bargaining agreements are contracts. However, we reverse the circuit court's conclusion that SDCL 53–9–4 and 53–9–5 prevented the Board from imposing liquidated damages.

[¶ 20.] GILBERTSON, Chief Justice, and AMUNDSON, Justice, concur.

[¶ 21.] KONENKAMP, Justice, and GORS, Acting Justice, dissent.

[¶ 22.] KERN, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 23.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, and being the trial judge in this case, did not participate.

GORS, Acting Justice (dissenting).

[¶ 24.] I respectfully dissent.

[¶ 25.] SDCL 53–9–4 voids liquidated damages. SDCL 53–9–5 applies this public policy to "every contract" unless the parties agree to liquidated damages. Collective bargaining agreements are contracts. *Wessington Springs Educ. Ass'n,* 467 N.W.2d at 104. The term "every contract" paints with a broad brush and admits no exceptions but agreement. The majority opinion frustrates the public policy by imposing liquidated damages without agreement.

[¶ 26.] Look no further than another public policy provision in the same chapter of the code. SDCL 53–9–7 voids every contract in restraint of marriage. Under the majority opinion, a school district could propose a requirement that all teachers be single. Upon impasse, this void term could then be imposed. Public policy would be frustrated.

[¶ 27.] Here the parties did not agree to liquidated damages. Therefore, the liquidated damages clause is void and should not be imposed upon impasse.

[¶ 28.] KONENKAMP, Justice, joins this dissent.