Hillsborough-northern judicial district
No. 2000-509

KEVIN COLLINS & a.

v.

CITY OF MANCHESTER

MARC M. LACHANCE & a.

v.

CITY OF MANCHESTER

Argued: March 7, 2002
Opinion Issued: May 13, 2002

*Hall, Hess, Stewart, Murphy & Brown, P.A.*, of Manchester (*Francis G. Murphy* on the brief and orally), for the plaintiffs.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert J. Meagher* on the brief and orally), for the defendant.

DALIANIS, J. The plaintiffs, thirty-nine police officers employed by the defendant, the City of Manchester, appeal from the order of the Superior Court (*Lynn*, J.) granting summary judgment to the defendant on the plaintiffs' breach of contract claims. We affirm.

The relevant undisputed facts are as follows. Each plaintiff was hired by the defendant between July 1992 and March 1996 pursuant to an individual "Three-Year Training Agreement." *See Collins v. City of Manchester*, 143 N.H. 708, 709 (1999) (*Collins I*). Each training agreement provided that the defendant would pay the plaintiff "a wage during and subsequent to training as specified in Salary III of the City of Manchester Compensation Plan." *See id.* Salary III of the City of Manchester Compensation Plan

included annual step increases, and was identical to the pay schedule incorporated into the collective bargaining agreement (CBA) between the defendant and the police union. Although the plaintiffs were not bargaining unit members when they were hired, they automatically became bargaining unit members covered by the CBA upon completion of their one-year probationary periods. All of the plaintiffs are or were bargaining unit members when they brought this action.

The defendant and the police union had a CBA, which expired on June 30, 1994. *Id.* The defendant and the police union functioned without a CBA until they executed a new CBA in May 1997. From July 1994 through May 1997, the defendant did not pay step increases to any bargaining unit employee, including the plaintiffs.

The new CBA was made retroactive to July 1994. It provided that from July 1994 until May 1997, bargaining unit employees were not entitled to step increases and that there would be no retroactive adjustments or payments. Upon ratification of the new CBA in May 1997, however, step increases would be reinstated and "the Salary Schedules under Schedule III [would] be increased by three and one-half percent." The agreement also provided that in July 1997, the salary schedules would be increased by an additional three and one-half percent and that in July 1998, they would be increased again by three percent. Once the new CBA went into effect, the plaintiffs received the pay increases to which they were entitled under it, but did not receive the step increases to which they claim they were entitled under their individual training agreements. *See id.*

In 1996, while negotiations for the new CBA were on-going, the plaintiffs brought a breach of contract action. The defendant moved to dismiss the action on jurisdictional grounds, which the trial court granted. *Id.* This court reversed, holding that because the plaintiffs' claims were based upon their individual training agreements and not the CBA, the superior court, and not the New Hampshire Public Employee Labor Relations Board (PELRB), had jurisdiction to hear the controversy. *Id.* at 710.

On remand, the trial court granted the defendant's motion for summary judgment upon the plaintiffs' breach of contract claim. The court ruled that once the plaintiffs completed their one-year probationary periods and became members of the bargaining unit, their individual training agreements were superseded either by the CBA, or, once it expired and before it was replaced, by the status quo doctrine. *See Appeal of Milton School Dist.*, 137 N.H. 240, 247 (1993) (after CBA lacking automatic renewal clause has expired and while employer and union are negotiating new CBA, status quo doctrine requires that employment terms and conditions remain the same). This appeal followed.

In reviewing a grant of summary judgment, we will affirm the judgment if the evidence reveals no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *See* RSA 491:8-a, III (1997).

On appeal, the plaintiffs first argue that the superior court's ruling contravenes our decision in *Collins I*. They assert that in *Collins I*, we held *sub silentio* that the training agreements were enforceable, despite the existence of the CBA, and thus the trial court erroneously concluded that the CBA superseded them. The plaintiffs misinterpret *Collins I*. In *Collins I*, we made no ruling with respect to whether the plaintiffs' training agreements were valid or enforceable. We merely ruled that the trial court had jurisdiction to decide this issue in the first instance. *See Collins I*, 143 N.H. at 710.

The plaintiffs next argue that the superior court erroneously ruled that their individual training agreements were unenforceable with respect to step increases after the 1991-1994 CBA expired. We disagree.

This is an issue of first impression for us. For guidance, we look to cases developed under the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 *et seq*. *See University System v. State*, 117 N.H. 96, 99 (1977).

The United States Supreme Court first addressed the validity and enforceability of individual employment contracts in a similar context in *J.I. Case Co. v. Labor Board*, 321 U.S. 332 (1944). The employees in *J.I. Case Co.*, like the plaintiffs, entered into individual employment contracts before they became union members. In *J.I. Case Co.*, unlike this case, the contracts were entered into before the union was certified as the employees' exclusive bargaining representative. *See id.* at 333. The company then refused to bargain with the union "in any manner affecting rights and obligations under the individual contracts while they remained in effect." *Id.* at 334. The National Labor Relations Board ruled that, by refusing to bargain with the union, the company violated the NLRA. *Id.* The United States Supreme Court agreed, holding that employers could not use individual employment contracts to defeat or delay collective bargaining, to exclude a contracting employee from a bargaining unit, or to limit or condition the terms of the CBA. *Id.* at 337.

The court did not rule that individual contracts were impermissible in all circumstances. For instance, it stated that "individual contracts may embody matters that are not necessarily included within the statutory scope of collective bargaining," provided that these contracts are "not inconsistent with a collective agreement or [do] not amount to or result from or [are] not part of an unfair labor practice." *Id.* at 339.

It also left open the possibility that individual contracts might provide more advantageous terms than a CBA. The court noted that while

individual contracts could not subtract from the CBA, they could possibly enhance benefits offered by the CBA. *Id.* The court cautioned, however, that

> the mere possibility that such agreements might be made [is] no ground for holding generally that individual contracts may survive or surmount collective ones. The practice and philosophy of collective bargaining looks with suspicion on such individual advantages.... [A]dvantages to individuals may prove as disruptive of industrial peace as disadvantages. They are a fruitful way of interfering with organization and choice of representatives.

*Id.* at 338. The court noted that "increased compensation," in particular, "is often earned at the cost of breaking down some other standard thought to be for the welfare of the group, and always creates the suspicion of being paid at the long-range expense of the group as a whole." *Id.* at 338-39.

To determine whether the plaintiffs' training agreements with respect to wages, including step increases, were enforceable after expiration of the 1991-1994 CBA, we examine whether they conflicted with the relevant CBA or otherwise interfered with "the principles of collective negotiation." *Troy v. Rutgers*, 774 A.2d 476, 488 (N.J. 2001).

■ We hold that the training agreements conflicted with the new CBA, and thus, were unenforceable with respect to wages once the new CBA became effective. While the training agreements incorporated the 1991-1994 pay schedule, the new CBA adopted a new pay schedule that gave employees a ten percent increase over the 1991-1994 pay schedule. The plaintiffs' training agreements failed to provide them with these collectively bargained for wage enhancements, and were thus unenforceable after the new CBA was ratified. *See Aguilera v. Pirelli Armstrong Tire Co.*, 223 F.3d 1010, 1015-16 (9th Cir. 2000) (employee's independent agreement superseded by CBA when inconsistent with it).

■ We hold also that the training agreements did not entitle the plaintiffs to retroactive step increases during the period of time between the expiration of the 1991-1994 CBA and the ratification of the new CBA. To hold otherwise would interfere with "the principles of collective negotiation." *Troy*, 774 A.2d at 488. As the United States Supreme Court observed in *J.I. Case Co.*, 321 U.S. at 338-39:

> The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group.... The workman is free, if he values his own bargaining position more than that of the group, to vote against representation; but the majority rules, and if it collectivizes the employment bargain, individual advantages or favors will generally in practice go in as a contribution to the collective result.

In return for obtaining a ten percent salary increase for all bargaining unit employees, and perhaps other enhanced benefits, the police union agreed that no bargaining unit employee would receive retroactive step increases. We cannot uphold the plaintiffs' training agreements with respect to step increases without upsetting the bargain struck on behalf of *all* bargaining unit employees, including the plaintiffs.

Moreover, permitting the plaintiffs to receive retroactive step increases based upon their individual training agreements could amount to an unfair labor practice. Upon expiration of the 1991-1994 CBA, which lacked an automatic renewal clause, the defendant was required to maintain the status quo, meaning that it had to maintain all of the terms and conditions of employment until the parties negotiated a new CBA. *Appeal of Alton School Dist.*, 140 N.H. 303, 307 (1995). "We have specifically held that the doctrine of status quo does not require payment of salary increases based on additional years of experience ('step increases') after a CBA expires." *Id.* We have also explained that the status quo doctrine stems from statutes making it an unfair labor practice for either party to refuse to negotiate in good faith the terms and conditions of employment. *Id.* at 307-08; *see also* RSA 273-A:5, I(e), II(d) (1999) (unfair labor practice to refuse to negotiate in good faith); RSA 273-A:3, I (1999) (public employer and exclusive bargaining representative must negotiate in good faith regarding terms and conditions of employment); RSA 273-A:1, XI (Supp. 2001) ("terms and conditions of employment" include wages).

Thus, after the 1991-1994 CBA expired, the defendant was required to negotiate with only the police union regarding wages, including step increases, for all bargaining unit members, including the plaintiffs. *See Appeal of Berlin Educ. Ass'n*, 125 N.H. 779, 783 (1984) (wages are mandatory subject of bargaining). Had the defendant granted step increases to the plaintiffs after the 1991-1994 CBA expired, it arguably would have committed an unfair labor practice either because it would have unilaterally changed a term or condition of employment in violation of the status quo, *see Appeal of City of Nashua Board of Education*, 141

N.H. 768, 772-73 (1997), or because it would have dealt directly with the plaintiffs instead of through their exclusive bargaining unit representative, *see Appeal of Franklin Education Assoc.*, 136 N.H. 332, 335-36 (1992).

We hold, therefore, that the plaintiffs' training agreements, with respect to wages, including step increases, were not enforceable after the 1991-1994 CBA expired.

We find the plaintiffs' argument that the trial court applied the wrong legal standard to review the defendant's summary judgment motion to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

All issues raised in the notice of appeal, but not briefed, are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.